Riley, Judge dissenting
[30] I respectfully dissent from the majority's conclusion that the preliminary injunction crafted by the trial court was overbroad. Preliminary and permanent injunctions serve different purposes and may, therefore, have different scopes. AGS Capital Corp., Inc. v. Product Action Intern., LLC , 884 N.E.2d 294, 313-14 (Ind. Ct. App. 2008), trans. denied . One of the purposes of a preliminary injunction is to protect the property and rights of the parties from any injury, usually by maintaining the status quo as it existed prior to the controversy, until the issues and equities in a case can be determined after a full examination and hearing. Id. at 314. For purposes of a preliminary injunction the status quo is usually defined as "the last actual, peaceful and noncontested status which preceded the pending controversy." Kozuch v. CRA-MAR Video Ctr., Inc. , 478 N.E.2d 110, 115 (Ind. Ct. App. 1985).
[31] The trial court's order prohibited the Huffs from using the Easements for "commercial logging or for hauling logs or trees, or forestry activity." (Appellants' App. Vol. II, p. 110). It is this last term which the majority finds to be overbroad. However, at the preliminary injunction hearing, the Huffs maintained that their commercial logging operations were part of the implementation of a forestry plan they had developed by the DNR. Regardless of their motives in logging their land, the logging is what precipitated the controversy between the parties. The trial court's inclusion of the term "forestry activity" was a reasonable description of the implementation of the forestry plan the Huffs described, and so I disagree with the majority that the term was overbroad for the purpose of preserving the status quo between the parties. Furthermore, while I agree with the majority that the Grant of Easement furnished the Huffs with the right to use the Easements to construct, develop, and use six single-family residential structures, it was undisputed that the Huffs were not in the process of constructing, developing or using residential structures when they undertook their commercial logging activities. Therefore, I disagree with the majority that the trial court's order prohibited the Huffs from exercising their rights.
[32] Although the issues were not addressed by the majority, I find that Cain demonstrated that irreparable harm would result from the Huffs' commercial logging, he had a reasonable likelihood of success *1039 on the merits of his claim, and that the public interest would not be disserved by a preliminary injunction on the Huffs' commercial logging pending a full examination and hearing on the issues. Therefore, I would affirm the trial court's grant of preliminary injunctive relief to Cain.
[33] In its decision the majority recommends "that this case be referred to mediation to allow the parties to hopefully find a middle ground in this dispute" and urges "the trial court to consider on remand whether the covenants on which middle ground cannot be found are contrary to law and should be vacated." (Opinion p. 16-17). I find that these observations are imprudent in that they border on offering an opinion on ongoing litigation and overstep our role in this review of a grant of preliminary injunctive relief. For these reasons, I dissent.